UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY HARPER,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Case No.: 12-cv-0546-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 15, 19)** |

Plaintiff Jeffrey Harper ("Harper") filed this action on February 2, 2012, appealing the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying supplemental security income benefits.[1] Harper moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the

---

[1] The challenged decision was rendered by Administrative Law Judge T. Patrick Hannon (the "ALJ") on May 13, 2010. The ALJ's decision became final on December 1, 2011, when the Appeals Council of the Social Security Administration denied Harper's request for administrative review of the decision.

1

Case No.: 12-0546 PSG
ORDER

arguments of counsel, the court DENIES Harper's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND

Harper was born February 18, 1962 and was 48 years old when the ALJ issued his decision.[2] He was incarcerated for several years for attempted murder and was released in September 2008.[3] Prior to his imprisonment, Harper had a variety of jobs, including work as a machinist, a quality control inspector, a server at a blues club, and a painter.[4] He reported the last year he worked as 2000.[5] He claims his disability began in January 2007 while he was in prison.

### A. Medical Evidence

Harper first reported his hip pain to the prison health services in December 2007, at which time the prison physician diagnosed him with osteoarthritis in his hip and prescribed physical therapy.[6] In January 2008 at a follow-up appointment, Harper continued to report pain, and the physician recommended continued physical therapy.[7] [8]

Harper's complaints regarding his hip continued throughout 2008, with a visit to the prison health services in April, June, July, and August.[9] At the April 2008 visit, the physician found that he was suffering from severe degenerative joint disease, that the pain in his hip had not responded

---

[2] *See* AR at 73.

[3] *See id.* at 31, 158, 179.

[4] *See id.* at 105.

[5] *See id.*

[6] *See id.* at 155.

[7] *See id.*

[8] *See id.*

[9] *See id.* at 150, 151, 156.

2
Case No.: 12-0546 PSG
ORDER

to medicine or physical therapy, and that Harper required use of a cane.[10] In June 2008, the prison physician recommended a consultation with an orthopedist to determine whether Harper required a hip replacement given his ongoing symptoms.[11] Harper saw the orthopedist the same month, and he recommended a left hip replacement with post-operation rehabilitation.[12] In July 2008, the prison physician echoed that recommendation but noted that because Harper was being paroled in August, Harper would be unable to get the surgery until he was out of prison.[13] That August, the same physician saw Harper again and repeated that he suffered from severe osteoarthritis in his hip but the physician observed no swelling in the joint.[14] The physician prescribed Harper with NSAIDs for pain.[15]

In January 2009, following his release, Harper visited Dr. Hideki Garren ("Garren"), a consultative examiner, regarding his hip pain.[16] Garren observed a decrease in Harper's range of motion for his left hip and noted Harper's complaints of pain in both hips and his lower back.[17] Garren concluded that "lifting and carrying are limited to 20 pounds occasionally and 10 pounds frequently."[18] He further found that "[s]tanding and walking are limited to 4-6 hours per day with usual breaks," that "[a]n assistive device for ambulation is not indicated," that "[s]itting is not

---

[10] *See id.* at 150.

[11] *See id.* at 163.

[12] *See id.*

[13] *See id.* at 158.

[14] *See id.* at 156.

[15] *See id.*

[16] *See id.* 179-80.

[17] *See id.*

[18] *Id.* at 180.

3
Case No.: 12-0546 PSG
ORDER

restricted," and that "[s]tooping, crouching, crawling and bending of the back are limited to occasionally only."[19]

In January 2209, state agency medical consultant Dr. I. Newton ("Newton") reviewed Harper's medical records and provided a physical residual functional capacity ("RFC") assessment.[20] His findings regarding Harper's RFC echoed and were based on Garren's findings, specifically that Harper occasionally could lift 20 pounds, frequently could lift 10 pounds, could stand or walk for about 6 hours per day, could sit for about six hours per day, and had no limitations for pushing or pulling.[21] Newton also found that Harper occasionally could climb ramps or stairs, stoop, kneel, crouch, and crawl, that he could never climb ladders, ropes, or scaffolds, and that he frequently could balance.[22] According to Newton's report, Harper at some point stated that he tried to walk a mile every other day, albeit with pain, and that he could lift 40 pounds but not often.[23] He also apparently indicated that he could carry a grocery bag one mile.[24]

In March 2009, Harper visited Dr. Thomas Welle ("Welle") who again noted Harper's pain and reduced range of motion in his left hip.[25] X-rays of Harper's hip revealed "marked degenerative changes of the hip joint with a large degenerative cyst in the humeral head and in the acetabulum."[26] Welle suggested hip replacement surgery, but Harper indicated that he was waiting

---

[19] *Id.*

[20] *See id.* at 181.

[21] *See id.* at 182.

[22] *See id.* at 183.

[23] *See id.* at 186.

[24] *See id.*

[25] *See id.* at 189.

[26] *Id.*

Case No.: 12-0546 PSG
ORDER

4

for MediCal qualification.[27] When Welle suggested other hospitals that may have permitted Harper to have the surgery without MediCal qualification, Harper instead opted to continue conservative treatment until he found out his MediCal status.[28]

Following the x-ray and the visit with Calle, Harper again had his medical records reviewed by a state agency medical consultant, this time Dr. S. Mathur ("Mathur").[29] In June 2009, Mathur made the same findings as Newton, save for noting a limitation in Harper's ability to push and pull with his lower extremities because of the findings in the X-ray.[30] Mathur concluded Harper was capable of light work.[31]

**B.    ALJ's Findings**

On June 19, 2009, Harper's request for reconsideration of his denial of supplemental security income ("SSI") was denied and he timely requested a hearing before the ALJ on August 13, 2009.[32] The ALJ held the hearing on April 15, 2010, and issued his decision on May 13, 2010.[33] The ALJ determined that Harper was not disabled as defined by the Social Security Act.[34]

For the first two steps of the disability analysis, the ALJ determined that Harper had not engaged in substantial gainful activity since October 29, 2008 and that the osteoarthritis in his hips qualified as a severe impairment under 20 C.F.R. § 404.1520(c).[35] But the ALJ found that

---

[27] *See id.* at 190.

[28] *See id.*

[29] *See id.* at 196.

[30] *See id.* at 197.

[31] *See id.*

[32] *See id.* at 12.

[33] *See id.*

[34] *See id.* at 18.

[35] *See id.* at 14.

5
Case No.: 12-0546 PSG
ORDER

insufficient medical evidence supported Harper's claim that the disability began in January 2007.[36] Following a review of the medical evidence Harper submitted, the ALJ determined for the third step that Harper's impairment or combination of impairments did not meet or medically equal any of the listed impairments.[37] At step four, the ALJ found that Harper had sufficient RFC to perform "the essentially full range of 'sedentary' work as defined in 20 C.F.R. § 416.967(a)."[38] At the fifth step, the ALJ found that Harper could perform all of the exertional demands at the given level of exertion and so the combination of his RFC, his age, education, and work experience, required a finding of "not disabled."[39] The Appeals Council declined to review the ALJ's decision, and the Commissioner adopted the decision on December 1, 2011.[40]

The ALJ gave several grounds for his determination. First, he observed that none of the medical evidence Harper presented suggested that he could not perform sedentary work.[41] The ALJ pointed to Garren's assessment, which noted that Harper had a stable but slightly antalgic gait, and to the two reviews of the consultants who determined Harper was able to perform sedentary activities in line with Garren's evaluation.[42] He also pointed out that the prison medical records recommended only hip replacement surgery with no indication of limitation on Harper's activities.[43]

---

[36] *See id.*

[37] *See id.* at 15.

[38] *Id.*

[39] *See id.* at 18.

[40] *See id.* at 1.

[41] *See id.* at 15.

[42] *See id.*

[43] *See id.* at 17.

The ALJ found that Harper was not credible regarding his subjective complaints about the severity of his pain and the effect it had on his ability to work.[44] The ALJ pointed to contradictions between the 15 to 20 yards Harper testified that he could walk and the one mile he told Garren that he attempted to walk every other day and the sixty miles he said he could drive.[45] The ALJ also highlighted that Harper's work history before his incarceration was inconsistent, revealing only six years of work out of the previous 26 years, which the ALJ noted "certainly brings up the possibility that [Harper] may have had other motivations not to work both before and after his alleged disability onset date than simply an inability to do so."[46]

Noting that he "accept[ed] the possibility that [Harper's] overall functional capacity may have declined in the period following his Exertional Questionnaire and leading up the hearing," the ALJ found that the absence of medical evidence to support that deterioration made it "impossible to accurately and objectively document this decrease in function."[47] The ALJ thus found insufficient evidence supported Harper's claims that his restrictions had existed for at least twelve months prior to the hearing, as required by the Social Security Act.[48] Given his finding that Harper's subjective complaints about the severity, intensity, and duration of the pain from his impairment therefore were at most partially credible, the ALJ found that nothing contradicted Garren's sedentary RFC determination.[49] The ALJ then observed that absent any other restrictions, the Medical-Vocational Grids were appropriate for determining whether Harper was disabled.[50]

---

[44] *See id.* at 16.

[45] *See id.* at 16.

[46] *See id.*

[47] *Id.* at 17.

[48] *See id.*

[49] *See id.*

7

Case No.: 12-0546 PSG
ORDER

# II. LEGAL STANDARDS

## A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Curnow benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[51] In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[52] When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[53] Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[54]

## B. Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[55] If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

---

[50] *See id.* at 18.

[51] *See Moncada v. Chater,* 6- F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[52] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[53] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501(9th Cir. 1989).

[54] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

[55] *See id.*

8

Case No.: 12-0546 PSG
ORDER

disabled" is made and the claim is denied.[56] If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded.[57] If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[58] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[59] The plaintiff has the burden of proving that he or she is unable to perform past relevant work.[60] If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[61] the determination of this issue comprises the fifth and final step in the sequential analysis.

### III. DISCUSSION

Although Harper presents a variety of challenges to the ALJ's determination, he focuses on two fundamental alleged flaws:

1. No substantial evidence supports the ALJ's rejection of Harper's claims of pain.

---

[56] *See id.*

[57] *See id.*

[58] A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[59] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[60] *See id.*

[61] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

9
Case No.: 12-0546 PSG
ORDER

      2.      Because the ALJ should have considered Harper's pain, he should not have ignored the testimony of the vocational expert and relied exclusively on the GRIDs.

A careful review of the record, however, shows that the fundamental claim underlying each of these complaints is erroneous. Put simply, there is in fact substantial evidence, to which the ALJ in fact pointed in his decision, that supports the ALJ's determination that Harper does not suffer from pain impacting his RFC.

First, as the ALJ explained and the record supports, Garren examined Harper and opined that Harper could perform sedentary work, including lifting and carrying up to twenty pounds occasionally and ten pounds frequently, sitting without restriction, and standing and walking for four to six hours per day with usual breaks, with other non-exertional limitations.[62] The ALJ also considered Garren's observations that Harper moved with a slightly "antalgic gait," but that "his gait was stable without assistance," and that he was able to heel and toe walk within normal limits.[63] Although Garren did observe some decreased range of motion in the left hip, he also noted full range of motion in Harper's right hip, both knees, and both ankles.[64] Garren further found that Harper had full ("5/5") motor strength in the bilateral lower extremities.[65]

Second, Newton's review of Harper's medical records also supports the ALJ's determination. Having reviewed Garren's assessment, Newton opined that Harper could occasionally lift and carry twenty pounds, frequently lift or carry ten pounds, stand or walk with normal breaks for six hours in an eight-hour workday, and sit for about six hours in an eight-hour

---

[62] *See* AR at 180.

[63] *Id.*

[64] *See id.* at 179.

[65] *See id.*

10

Case No.: 12-0546 PSG
ORDER

workday.[66] He further found that Plaintiff could frequently balance occasionally climb ramp and stairs, stoop, kneel, crouch, or crawl, but could never climb ladders, ropes or scaffolds.[67]

Third, Mathur's subsequent review of Harper's new medical evidence also found Harper could engage in sedentary work, even accounting for the x-ray findings.[68] He found that Harper could still occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk about six hours in an eight hour workday, and sit with normal breaks for about six hours in a normal workday, with limitations on pushing and pulling in his lower extremities.[69] He further opined that Harper was limited to frequent balancing, occasional stooping, kneeling, crouching, and climbing of ramps and stairs, and should not climb ladders, ropes or scaffolds.[70] These findings contradict Harper's allegations of disabling pain, and so the ALJ was entitled to rely upon them as grounds for discounting Harper's allegations.[71]

Harper criticizes the physicians' reports because there was other evidence in the record – in particular the subsequent x-rays – that Harper believes contradict their opinions. But this focus on the x-rays and other evidence in the record supporting Harper's position ignores the nature of deferential review of administrative action under the "substantial evidence" standard. Although Harper reasonably highlights the bases for his intermittent work history, his daily activities, and the course of his medical treatment, all of which the ALJ relied on in addition to the physician

---

[66] *See id.* at 182.

[67] *See id.* at 183.

[68] *See id.* at 196-97.

[69] *See id.*

[70] *See id.*

[71] *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

11
Case No.: 12-0546 PSG
ORDER

testimony, the "substantial evidence" review focuses on what in the record might support the ALJ decision, not whether other parts of the record might contradict it.[72]

In any event, as the ALJ pointed out in his decision, there was no contradiction between the new x-ray evidence and a sedentary RFC finding. As the ALJ highlighted, none of the medical evidence Harper provided suggested that he could not perform sedentary work.[73] The reports consistently advised that he should have his hip replaced, that he was in pain, and that at times he needed a cane to aid in walking. None of the reports indicate any limits on sitting, lifting light weights, or the length of his ability to walk or stand. And Harper is not attacking the medical evidence; he is challenging the credibility determination. Given that the medical evidence does not suggest any limitations beyond a sedentary RFC, as well as Harper's failure to provide any other evidence to support the decrease in his functioning between his medical examination and the hearing date, substantial evidence supports the ALJ's determination that he was not credible.

Given the ALJ's RFC finding, the ALJ permissibly relied upon the GRIDs.[74] There was no need to consider the vocational expert's response because it was only relevant if Harper's testimony was credible.[75]

---

[72] *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld."); *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that an ALJ's reliance on an illegitimate reason for a credibility finding, along with other proper reasons, does not automatically result in remand.); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding that an ALJ's error may be harmless where the ALJ provides one or more invalid reasons for disbelieving a claimant's testimony, but also provides valid reasons supported by the record).

[73] *See* AR at 17.

[74] *See Heckler v. Campbell*, 461 U.S. 458, 462 (1983); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

[75] *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (holding ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").

Under a de novo standard of review, the court might reach a different conclusion than the ALJ. The court particularly notes the diagnoses by Harper's treating physicians Welle and Fountain of severe degenerative joint disease and osteoarthritis.[76] But a treating physician's opinion may be contradicted and need not be accepted when specific testimony from others is present in the record.[77] Even more important, standards of review must be respected. Applying the standard that applies here – substantial evidence – the court finds that ALJ's determination passes muster.

Harper's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  May 22, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[76] *See* AR at 150-158, 179, 189,193, 208.

[77] *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

13

Case No.: 12-0546 PSG
ORDER